IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AHMED ABDULRAZAAQ, | * |
| Plaintiff, | * |
| | * Civil Action No.: RDB-09-3197 |
| v. | * |
| JOSEPH ROSATI, et al., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Ahmed Abdulrazaaq ("Plaintiff" or "Abdulrazaaq"), proceeding *pro se*, has filed this civil action asserting constitutional and tort law claims against Defendants Joseph Rosati, William Reed, and Don Tush of the Drug Enforcement Administration ("DEA"). Plaintiff filed this lawsuit soon after he was acquitted of the criminal charge of conspiracy to defraud the United States in the case, *United States v. Ahmed Abdulrazaaq*, Crim. No. 06-cr-444-BEL-3 ("the underlying case"). Abdulrazaaq claims that Defendants knowingly provided a false affidavit of facts which led to his indictment, search, arrest, and prosecution in the underlying case. Defendants have moved this Court to dismiss Abdulrazaaq's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6), or alternatively, to enter summary judgment on their behalf under Fed. R. Civ. P. 56. The parties' submissions have been reviewed and no hearing is necessary to decide this matter. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, Defendants' Motion to Dismiss or for Summary Judgment (Paper No. 10) is GRANTED and summary judgment is entered on behalf of the Defendants.

**BACKGROUND**

Special Agent Joseph Rosati ("Rosati"), and Diversion Investigators Don Tush ("Tush") and William T. Reed ("Reed") (together, "Defendants"), are employees of the Drug Enforcement Administration ("DEA"), and assigned to the DEA's Baltimore District Office ("BDO"). Complaint ¶ 2. Defendants were involved in the criminal investigation of Newcare Home Health Services, Inc. ("Newcare"), a pharmacy located in Baltimore, Maryland, for the illegal sale of Hydrocodone, a controlled substance. Defs.' Ex. 1, at ¶ 3; Defs.' Ex. 2, at ¶ 3; Defs.' Ex. 3, at ¶ 3.

The DEA's investigation led to the October 4, 2006, grand jury indictment of four Newcare employees, namely, Steven Abiodun Sodipo, Callixtus Onigbo Nwaehiri, Nannette C. Patterson, and Plaintiff Ahmed Alhaji Abdulrazaaq ("Plaintiff" or "Abdulrazaaq"). Defs.' Ex. 1, at ¶ 5; Defs.' Ex. 2, at ¶ 4; Defs.' Ex. 3, at ¶ 4. Plaintiff Abdulrazaaq, Sodipo, Nwaehiri, and Patterson were each charged with the crimes of unlawful distribution of at least 8 million dosage units of Hydrocodone and money laundering. Defs.' Ex. 1, at ¶ 5. On October 10, 2006, search warrants were executed at several locations, including at the Newcare premises and the residences of Sodipo, Nwaehiri, and Patterson. That same day, Abdulrazaaq was arrested at his home in Edgewood, Maryland, pursuant to a bench warrant, and he was incarcerated for four days. Defendants state, and it is undisputed, that they did not testify before the first grand jury, which returned the initial indictment, or in any way participate in Abdulrazaaq's arrest. Defs.' Ex. 1, at ¶¶ 5, 6; Defs.' Ex. 2, at ¶¶ 4-6; Defs.' Ex. 3, at ¶¶ 4-6.

On September 5, 2007, Defendant Tush testified before a second grand jury concerning the Newcare investigation. Defs.' Ex. 1, at ¶ 8. On September 19, 2007, a superseding indictment was entered, pursuant to which Abdulrazaaq was named only in Count Thirteen for conspiracy to defraud the United States "by impeding, impairing, obstructing, and defeating the

lawful government functions of the Internal Revenue Service . . . [in the] assessment, and collection of . . . individual income, social security and Medicare taxes." Defs.' Ex. 1, at ¶ 8; Defs.' Ex. 2, at ¶ 8; Defs.' Ex. 3, at ¶ 7. Tush states that his testimony before the second grand jury related to the alleged controlled substance violations and did not concern any tax law violations. Defs.' Ex. 1, at ¶ 8.

As a result of the underlying case, Patterson pled guilty to several charges, and Sodipo and Nwaehiri were found guilty of controlled substance and tax violations after a jury trial. On September 22, 2008, Abdulrazaaq, who was tried separately, was acquitted of the single tax fraud charge asserted against him in the superseding indictment after a six day jury trial.

On November 4, 2009, Abdulrazaaq filed an administrative claim with the DEA seeking $2.5 million in damages. Defs.' Ex. 4. On November 30, 2009, Abdulrazaaq filed the instant lawsuit in this Court, and one month later the DEA issued a letter denying Abdulrazaaq's claim. Defs.' Ex. 5. On February 5, 2010, the Defendants filed the subject motion to dismiss (Paper No. 10). On April 18, 2010, Abdulrazaaq filed his Response in Opposition to Defendants' Motion to Dismiss or for Summary Judgment Nunc Pro Tunc (Paper No. 19), in which he has further detailed the nature and bases of his claims.

## STANDARD OF REVIEW

If a court considers matters outside of the pleadings on a Rule 12(b)(6) motion, it must treat the motion as one for summary judgment and provide all parties a "reasonable opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(b). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261

(4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). In this case, Abdulrazaaq has been placed on notice that the Defendants' motion might be treated as one for summary judgment. Defendants' motion has an alternative caption and is supported by several supporting exhibits. Likewise, Abdulrazaaq has submitted an affidavit in support of his opposition. Accordingly, resolution of the claims on summary judgment is appropriate.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

Abdulrazaaq claims that Defendants knowingly provided a false affidavit of facts, which ultimately led to his indictment, search, arrest, and prosecution. On the basis of this alleged conduct, Abdulrazaaq has asserted a 28 U.S.C. § 1331 civil rights action under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and tort law causes of action for personal and property damage against Defendants in their individual capacities.[1]

### I.     Constitutional Claims

Although Abdulrazaaq has not cited any specific right or provision under the United States Constitution, his lawsuit is construed as alleging a violation of his Fourth Amendment rights. *See Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (noting that claims of false arrest, false imprisonment, and malicious prosecution should be considered together as "essentially claims alleging a seizure of the person in violation of the Fourth Amendment"). In essence, Abdulrazaaq has alleged that he was unlawfully seized, without probable cause, as a consequence of Defendants' wrongful actions. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996) ("The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable."). Nevertheless, even assuming, *arguendo*, that Abdulrazaaq's constitutional claim has been properly plead, this Court grants summary judgment in favor of Defendants based upon the fact that they are clearly entitled to qualified immunity as a matter of law.

---

[1] In his initial Complaint, Abdulrazaaq appeared to be asserting individual and official capacity claims against the Defendants. However, in his Opposition brief, Abdulrazaaq states that he is only asserting claims against the named Defendants in their individual capacities. Pl.'s Opp. at ¶¶ 4, 14.

Government officials are generally protected by qualified immunity when they perform the discretionary duties of their offices. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The affirmative defense of qualified immunity shields an officer from monetary damages as long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

Courts have traditionally engaged in a two-step analysis when assessing whether an officer is protected by qualified immunity. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). First, a court determines whether a constitutional right has been violated. Second, "assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The United States Supreme Court has recently modified this rigid, two-tiered approach, by allowing reviewing judges to evaluate the two factors in whatever order they wish, in view of the unique facts of a case. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("[t]he judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). Finally, this Court is mindful of "the importance of resolving immunity questions at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This is premised upon the observation that the qualified immunity "entitlement is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 556 (1985) (emphasis in original).

Abdulrazaaq has alleged that Defendants are responsible for issuing false statements in an affidavit for a search warrant, which was ultimately used to procure his indictment, arrest, and

prosecution. Compl. ¶¶ 12, 18, 19, 20, 22, 23. A plaintiff must make a particularized showing in support of a Fourth Amendment violation for the alleged incorporation of false statements in a search warrant. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The Fourth Circuit Court of Appeals has noted that a plaintiff must show both that a defendant made a misrepresentation that it was made "deliberately" or with "reckless disregard for the truth." *See Miller v. Prince George's County, Md.*, 475 F.3d 621, 627-29 (4th Cir. 2007). More specifically, a plaintiff must present:

> evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.

*Id.* at 627 (internal quotation marks omitted). In addition, a plaintiff must show that the false statements or omissions were "material," in that they were "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156; *see also Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) ("It is well-established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is necessary to the finding of probable cause.") (internal quotation marks omitted).

In October of 2006, Abdulrazaaq was arrested pursuant to a bench warrant approximately one week after he was indicted by the initial grand jury. Nothing in the record indicates that the Defendants said, did, or omitted anything that improperly influenced the grand jury's probable cause determination; indeed, none of the Defendants testified before the first grand jury. Defs.' Ex. 1, at ¶ 5; Defs.' Ex. 2, at ¶ 5, 7; Defs.' Ex. 3, at ¶ 4. In addition, Defendants have stated that they played no role in Abdulrazaaq's seizure and there is absolutely no evidence to the contrary. Defs.' Ex. 1, at ¶ 6; Defs.' Ex. 2, at ¶ 5, 7; Defs.' Ex. 3, at ¶ 5, 6. Defendants Rosati and Reed co-signed an affidavit for a warrant to search the Newcare premises and three other properties,

but none of these properties were owned or leased by Abdulrazaaq. Defs.' Ex. 2, at ¶ 5, 7; Defs.' Ex. 3, at ¶¶ 5, 6. Abdulrazaaq has not presented any specific allegations or evidence rebutting the Defendants' proffer that the affidavit does not contain any misrepresentations and was prepared in good faith. Defs.' Ex. 2, at ¶ 5; Defs.' Ex. 3, at ¶ 5. Finally, there is no evidence showing that Defendants committed any wrongful act in connection with the rendering of the superseding indictment. While Tush did testify before a second grand jury prior to the issuance of the superseding indictment, his testimony did not relate to the tax charge that was brought against Abdulrazaaq.[2] Defs.' Ex. 1, at ¶ 8.

Thus, even after construing the facts in a light most favorable to Abdulrazaaq, this Court finds that his Fourth Amendment *Bivens* claim is entirely unsubstantiated. There is no indication in the record that the Defendants made any misrepresentations that led to Abdulrazaaq's seizure. His seizure and prosecution resulted from indictments returned by two separate grand juries that were based upon probable cause. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (noting that "[t]he Fourth Amendment requires that arrest warrants be based 'upon probable cause, supported by Oath or affirmation'—a requirement that may be satisfied by an indictment returned by a grand jury"); *see also Collis v. United States*, 498 F. Supp. 2d 764, 770-71 (D. Md. 2007) (finding that "once . . . grand jury indictments [are] returned, the procedural requirements of the Fourth Amendment [are] satisfied").

Moreover, Abdulrazaaq has provided little beyond bald and conclusory allegations of misconduct committed by the Defendants. He has not identified any specific misrepresentation, nor has he adduced evidence revealing that a misrepresentation was made "deliberately" or was

---

[2] Even if there was evidence that Tush did provide testimony concerning the tax charge brought against Abdulrazaaq in the superseding indictment, it would not benefit Abdulrazaaq's constitutional claim. Government officials are afforded absolute immunity as witnesses testifying before a grand jury. *Lyles v. Sparks*, 79 F.3d 372, 378 (4th Cir. 1996).

material to any finding of probable cause. Constitutional claims that are premised on such a weak showing are routinely rejected by reviewing courts. *See, e.g., Unus v. Kane*, 565 F.3d 103, 125 (4th Cir. 2009) ("Simply put, the plaintiffs fail to sufficiently allege that [the agent]— deliberately or with reckless disregard for the truth—made any material misrepresentations of fact in violation of the Constitution, and we therefore affirm . . . that [the agent] is entitled to qualified immunity on the substantive *Bivens* claim."); *White v. Wright*, 150 Fed. Appx. 193, 199 (4th Cir. 2005) (affirming entry of summary judgment against plaintiff because his claim was based upon "unsupported allegations and speculation of fabrication"); *United States v. Simons*, 206 F.3d 392, 402 (4th Cir. 2000) (stating that to challenge a search warrant "on the ground that the supporting affidavit was not truthful, [defendant] must do more than simply make conclusory claims of a misstatement. Instead, he must show that [the agent] made the false statement either deliberately or with reckless disregard for its truth and that the statement was essential to the finding of probable cause.").

## II.     Tort Law Claims

A plaintiff must bring suit under the Federal Tort Claims Act ("FTCA") to obtain recovery for injury to person or property resulting from the wrongful acts of a federal employee "'acting within the scope of his office or employment.'" *Jamison v. Wiley*, 14 F.3d 222, 227 (4th Cir. 1994) (quoting 28 U.S.C. § 2679(b)(1)). A cause of action under the FTCA is "exclusive of any other civil action or proceeding for money damages . . . against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1).

In this case, Abdulrazaaq has not cited the FTCA as a basis for his claims, and he has explicitly stated that the United States is not a party to this lawsuit. Pl.'s Opp. at ¶ 5. Furthermore, even if the United States was substituted as a party defendant, this Court would

lack jurisdiction over Abdulrazaaq's tort claims because he failed to completely exhaust his administrative remedies before bringing the present action. *See* 28 U.S.C. § 2675(a). The record reflects that Abdulrazaaq prematurely filed his Complaint on November 30, 2009, prior to the DEA's denial of his claim and before six months had elapsed from the initial filing of his administrative claim. *See McNeil v. United States*, 508 U.S. 106, 113 (1980) (noting that a prematurely filed FTC claim cannot be cured by subsequent administrative exhaustion).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or for Summary Judgment (Paper No. 10) is GRANTED and summary judgment is entered on behalf of the Defendants. A separate Order follows.


Dated: July 19, 2010

/s/ _Rll D. Bennett_
Richard D. Bennett
United States District Judge